[Civ. No. 28843. Fourth Dist., Div. One. Mar. 15, 1984.]

HERMAN W. KREUTZER, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO et al., Defendants and Respondents.

66

**COUNSEL**

Haverstick & Homann and Thomas F. Homann for Plaintiff and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Howard P. Brody, Chief Deputy County Counsel, and Barbara B. Baird, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**COLOGNE, J.**—Herman W. Kreutzer appeals an order denying him attorney's fees.

Kreutzer was issued an outdoor entertainment license by the San Diego County Sheriff's Department for his recreational facility known as "Big Oak Ranch." The license was subject to certain conditions including attendance limits at outdoor concerts. The license was issued for one year.

In May 1982, Kreutzer applied for renewal of his license. The sheriff denied the renewal on the ground Kreutzer had repeatedly violated the conditions of his license. Kreutzer requested and was granted a hearing before a hearing officer appointed by the sheriff pursuant to San Diego County Code sections 16.109 and 16.111. The hearing officer affirmed the denial

of Kreutzer's application. Kreutzer appealed this decision to a hearing officer appointed by the board of supervisors from a list of qualified hearing officers (SDCC § 16.114; App. 74).

This hearing officer determined Kreutzer had wilfully exceeded the attendance restrictions on his license on three occasions and had "willfully misrepresented his intentions to abide by the numerical restrictions" on three occasions. However, the hearing officer did not find Kreutzer's conduct justified an outright denial of his application, but rather, a suspension of his license for nine months with the imposition of the suspension suspended on the condition he not commit further violations. Any future violation was "to result in the immediate imposition of the suspension."

Pursuant to the hearing officer's decision, Kreutzer was issued a new license subject to conditions which reflected the hearing officer's findings. Among the conditions imposed was one requiring Kreutzer to hire private security guards to count the number of persons attending concerts at the Big Oak Ranch. This was to ensure Kreutzer did not exceed the attendance limitations.

On October 10, 1982, Kreutzer held a country music concert starring Jerry Reed. He failed to hire private security guards as required by the license. On November 3, 1982, the sheriff's department imposed the nine-month suspension which had been stayed. Kreutzer then requested a hearing. The sheriff's department denied Kreutzer's request, reasoning that the terms of his license allowed for an immediate suspension and no hearing was necessary.

Following the sheriff's department denial, Kreutzer filed a petition for a writ of mandate in superior court. The superior court issued an alternative writ, requiring the sheriff's department to either provide a hearing or show cause why it should not be required to do so. The sheriff's department chose to provide Kreutzer with a hearing. Both the initial hearing officer and one appointed by the board of supervisors upheld the suspension of Kreutzer's license. Kreutzer did not further appeal those determinations.

Thereafter, Kreutzer filed a motion under Government Code section 800 and 42 United States Code[1] section 1988 in superior court for attorney's fees incurred in obtaining the hearing from the sheriff's department. This motion was denied. The petition was then dismissed as moot.

On appeal, Kreutzer contends he was entitled to attorney's fees as a prevailing party in an action to enforce his constitutional right to a hearing

---

[1] All statutory references are to 42 United States Code unless otherwise specified.

(§ 1988). Respondents argue Kreutzer failed to state a cause of action under section 1983, was not a prevailing party and the denial of attorney's fees was a proper exercise of discretion. Kreutzer also contends he was entitled to attorney's fees under Government Code section 800.

I

The first issue presented is whether Kreutzer stated a cause of action under 1983 in his petition for mandate. Section 1983, in pertinent part, states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

State courts have concurrent jurisdiction with federal courts to entertain actions brought under section 1983 (*Martinez* v. *California* (1980) 444 U.S. 277, 283-284, fn. 7 [62 L.Ed.2d 481, 488, 100 S.Ct. 553, 558]; *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 837 [129 Cal.Rptr. 453, 548 P.2d 1125]).

*A. Labelling of Pleadings*

Respondents initially point out Kreutzer did not bring his petition specifically pursuant to section 1983. It is true Kreutzer did not caption his petition as being brought under section 1983, nor did he specifically mention section 1983 in the body of the petition. In California, however, the nature and character of a pleading are to be determined from its allegations, regardless of what they may be called, and the subject matter of the action and the issues involved are determined from the facts alleged rather than from the title of the pleading (*Jaffe* v. *Carroll* (1973) 35 Cal.App.3d 53, 57 [110 Cal.Rptr. 435]).

Under the federal rules, all pleadings are to be construed so as to do substantial justice (Fed. Rules Civ. Proc., rule 8(f), 28 U.S.C.). A defect in the caption is considered "merely a formal error and not a fatal defect" (*Parker* v. *Graves* (5th Cir. 1973) 479 F.2d 335, 336). The allegations in the complaint must be examined in order to determine the nature of the plaintiff's cause of action (*ibid.*).

Thus, under either California or federal law, the labelling of a plaintiff's pleading is not determinative (see *Bach* v. *County of Butte* (1983) 147

Cal.App.3d 554, 560-564 [195 Cal.Rptr. 268], for discussion on whose pleading rules should apply when testing the sufficiency of a complaint).

## B. Parties

Respondents next contend Kreutzer failed to state a cause of action under section 1983 because he did not allege sufficient facts to bring either the County of San Diego or the individual defendants within the purview of section 1983.

### County of San Diego

■ In *Monroe* v. *Pape* (1961) 365 U.S. 167, page 191 at footnote 50 [5 L.Ed.2d 492, 507, 81 S.Ct. 473, 486], the United States Supreme Court declared a local government was not a "person" within the meaning of section 1983. Later in *Monnell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 690 [56 L.Ed.2d 611, 635, 98 S.Ct. 2018, 2035-2036], the Supreme Court overruled *Monroe* v. *Pape* and held a cause of action could be stated against a local government under section 1983 if the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers. However, *Monnell* upheld *Monroe* v. *Pape* to the extent that a local government cannot be held liable solely on a respondeat superior theory (*id.* 436 U.S. at p. 691 [56 L.Ed.2d at p. 636]; see also *Haskins* v. *San Diego County Dept. of Public Welfare* (1980) 100 Cal.App.3d 961, 972 [161 Cal.Rptr. 385]).

Here, Kreutzer did not allege the denial of his hearing was due to any policy, regulation, ordinance, or custom of the County of San Diego; nor was there any determination that such was the case. The only basis for liability was on the theory of respondeat superior. Thus, Kreutzer failed to state a cause of action against the County of San Diego.

### The Individual Defendants

■ Under section 1983, a complaint as to individual defendants is insufficient if it does not plead specific facts regarding the individual capacities of the defendants and the specific acts of each (*Gilbert* v. *School Dist. No. 50 Adams Cty.* (D.Colo. 1980) 485 F.Supp. 505, 509). Personal involvement of the defendant is a necessary element of the cause of action (*Fialkowski* v. *Shapp* (E.D.Pa. 1975) 405 F.Supp. 946, 950). Supervisory personnel may not be held liable purely on a respondeat superior theory (*Knipp* v. *Weikle* (N.D.Ohio 1975) 405 F.Supp. 782, 783). It is necessary that the supervisory individual participate in some manner in the allegedly

unlawful actions of his employee or subordinate (*ibid.*). An individual's general knowledge coupled with direct supervisory control may be sufficient to hold the individual personally involved in the unlawful acts of the subordinate (*Fialkowski* v. *Shapp, supra,* 405 F.Supp. 946, 951).

■ Kreutzer named two individual defendants, L. Jeanne Walsh, the supervisor of the sheriff's department licensing division, and Sheriff John F. Duffy. The exhibits to Kreutzer's complaint quite clearly demonstrate that Walsh was personally involved since she wrote the letter recommending Kreutzer's suspension, informed Kreutzer of the decision to suspend his license and denied his hearing request. Thus, Walsh was a proper party under section 1983.

As to Duffy, neither the petition nor the accompanying exhibits indicates any actions taken by him. Nor are there any allegations that the denial of the hearing was pursuant to a policy or decision implemented by Duffy. Duffy's name merely appears on the letterhead of sheriff's department stationery and on a signature line signed by Walsh. As was said in *Gilbert* v. *School Dist. No. 50 Adams Cty., supra,* 485 F.Supp. 505, at page 509: "Information regarding the official capacities of the administrators and the specific acts of each defendant should be pled. While it is generally true that the rules of civil procedure do not require exactitude in pleading claims for relief, greater particularity and precision are required in civil rights cases than those civil cases which do not involve specific rights expressed as matters of constitutional doctrine."

While it may be Duffy did, in fact, participate or otherwise authorize the denial of the hearing here, Kreutzer failed to so allege and thus failed to state a cause of action against Duffy.

*C. Constitutional Deprivation*

■ Next, respondents contend Kreutzer failed to state a cause of action under section 1983 because he suffered no constitutional deprivation. That argument has no merit.

■ The Fourteenth Amendment protects individuals from being deprived of life, liberty and property without due process of law. The Fourteenth Amendment's requirement of due process applies to the revocation or suspension of licenses (see *Rios* v. *Cozens* (1972) 7 Cal.3d 792, 795 [103 Cal.Rptr. 299, 499 P.2d 979], reinstated at 9 Cal.3d 454, 455 [107 Cal.Rptr. 784, 509 P.2d 696] [driver's license]; *Slaughter* v. *Edwards* (1970) 11 Cal.App.3d 285, 295 [90 Cal.Rptr. 144] [real estate broker's

license]; *Angelopulos* v. *Bottorff* (1926) 76 Cal.App. 621, 625 [245 P. 447] [restaurant license]).

Violations of procedural due process may be redressed under section 1983 (*Carey* v. *Piphus* (1978) 435 U.S. 247 [55 L.Ed.2d 252, 98 S.Ct. 1042]). The right to procedural due process is "absolute" in that it does not depend upon the merits of the underlying substantive allegations (*id.* at p. 266 [55 L.Ed.2d at pp. 266-267]). Rigorous procedural rules are particularly important when First Amendment rights are implicated (*Southeastern Promotions, Ltd.* v. *Conrad* (1975) 420 U.S. 546, 561 [43 L.Ed.2d 448, 460-461, 95 S.Ct. 1239, 1247-1248]).

In his petition, Kreutzer alleged: "Forfeiture of constitutional rights to freedom of expression and denial of the ability to earn a livelihood without first providing a hearing and opportunity to contest the legality of the charges and the proposed sanctions violates petitioner's right to due process of law." ■ Respondents argue, however, that no hearing was required here because Kreutzer's license itself provided for *immediate* imposition of the stayed suspension upon a further violation. In certain limited circumstances, a license may be suspended automatically without a prior hearing, but that is not the situation here.

■ When a suspension or revocation is a mere ministerial act, no hearing is required (*DiGenova* v. *State Board of Education* (1955) 45 Cal.2d 255, 262 [288 P.2d 862]; *Slaughter* v. *Edwards, supra,* 11 Cal.App.3d 285, 293-294). For example, if there is a mandatory duty to suspend or revoke a license upon the conviction of a specified crime, no hearing is necessary (*DiGenova* v. *State Board of Education, supra,* 45 Cal.2d at p. 262). In such a situation, the only question is a legal one, i.e., whether the licensee was convicted of the specified crime and due process is satisfied because the licensee had his day in court when he was put on trial and convicted of the specified crime (*Purifoy* v. *State Board of Education* (1973) 30 Cal.App.3d 187, 192 [106 Cal.Rptr. 201]; *Slaughter* v. *Edwards, supra,* 11 Cal.App.3d 285, 294).

The situation is much different, however, when the agency must make an independent determination of the facts before it may suspend or revoke (*DiGenova* v. *State Board of Education, supra,* 45 Cal.2d 255, 259). Then the revocation is not a mere ministerial act, but rather, requires an adjudication of the facts. In such a situation, a license may not be suspended or revoked without granting a hearing to the licensee (*Slaughter* v. *Edwards, supra,* 11 Cal.App.3d 285, 293-294). Indeed, San Diego County's Uniform Licensing Act recognizes a licensee must be given notice and an opportunity

to be heard before his or her license may be revoked or suspended (San Diego Regulatory Ordinance, §§ 16.110-16.115).[2]

 Here, the imposition of the suspension depended upon a factual determination. Only after establishing the fact of a violation was the sheriff's department entitled to impose the suspension. Since procedural due process rules exist to minimize the risk of substantively unfair or mistaken deprivation of life, liberty or property by enabling persons to contest the basis on which the government proposes to deprive them of their protected interests (*Fuentes* v. *Shevin* (1972) 407 U.S. 67, 81 [32 L.Ed.2d 556, 570, 92 S.Ct. 1983, 1994]), Kreutzer was entitled to a hearing so he could contest whether a violation had, in fact, occurred.

## II

 Respondents next contend that even if Kreutzer's action were properly brought under section 1983, he should not be considered a "prevailing party" for the purposes of the award of attorney's fees under section 1988.

 In order to be a prevailing party for the purposes of section 1988, it is not necessary there be a full litigation of the issues or a judicial determination that the plaintiffs' rights have been vindicated (*Maher* v. *Gagne* (1980) 448 U.S. 122, 129 [65 L.Ed.2d 653, 661, 100 S.Ct. 2570, 2575]). The fact a plaintiff prevailed through a settlement rather than through litigation does not weaken his or her claim to fees (*ibid.*; *Brown* v. *Culpepper* (5th Cir. 1977) 559 F.2d 274, 277; Sen.Rep. No. 94-1011, p. 5, reprinted in 1976 U.S. Code Cong. & Admin. News at p. 5912; *Lummi Indian Tribe* v. *Oltman* (9th Cir. 1983) 720 F.2d 1124, 1125).

The standard for determining whether a plaintiff is a prevailing party has been variously stated. The United States Supreme Court in *Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 433 [76 L.Ed.2d 40, 50 103 S.Ct. 1933, 1939], approved of the following typical "formulation": " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " (Quoted from *Nadeau* v. *Helgemoe* (1st Cir. 1978) 581 F.2d 275, 278-279.) The Supreme Court noted this was "a generous formulation" (*ibid.*).

 Under this "generous formulation," Kreutzer is a prevailing party for the purposes of section 1988. He sought by his petition to obtain a

---

[2]The Uniform Licensing Act is silent on an immediate suspension provision such as is involved here.

hearing before the suspension of his license. The sheriff acquiesced to this demand upon issuance of the alternate writ. The fact the sheriff chose to settle rather than litigate does not diminish Kreutzer's status of prevailing party.

## III

 Finally, respondents contend that even if Kreutzer stated a cause of action under section 1983, the trial court properly exercised its discretion in denying fees under section 1988.

Section 1988, in pertinent part, states: "In any action or proceeding to enforce a provision of section . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as a part of the costs."

By enacting section 1988, Congress intended to remedy an anomalous gap created by the United States Supreme Court's decision in *Alyeska Pipeline Service Co.* v. *Wilderness Society* (1975) 421 U.S. 240 [44 L.Ed.2d 141, 95 S.Ct. 1612], refusing to permit plaintiffs to recover attorney's fees for public interest litigation on a private attorney general theory in the absence of statutory authorization (Sen.Rep. No. 94-1011, 94th Cong., 2d Sess. pp. 4-5, reprinted in 1976 U.S. Code Cong. & Admin. News 5908, 5911-5912; *Serrano* v. *Unruh* (*Serrano IV*) (1982) 32 Cal.3d 621, 632, fn. 13 [186 Cal.Rptr. 754, 652 P.2d 985]).[3] Congress noted "the idea of the 'private attorney general' is not a new one, nor are attorneys' fees a new remedy" (Sen.Rep. No. 94-1011, 94th Cong., 2d Sess. p. 3, reprinted in 1976 U.S. Code Cong. & Admin. News 5908, 5910). Congress further noted section 1988 created "no startling new remedy" but sought to continue the prior practice of awarding attorney fees (Sen.Rep. No. 94-1011, 94th

---

[3]California also enacted a private attorney general attorney's fees provision, Code of Civil Procedure section 1021.5, in response to *Alyeska* (*Serrano IV, supra,* 32 Cal.3d 621, 633). Kreutzer did not seek an award under Code of Civil Procedure section 1021.5, which states: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."
Nor would he probably be entitled to fees under this section since his action resulted in a very questionable benefit to the general public and what benefit there is involves a very small class of persons in any event.

Cong., 2d Sess. p. 6, reprinted in 1976 U.S. Code Cong. & Admin. News 5908, 5913).[4]

Congress stated the purpose of awarding attorney's fees under section 1988 was to ensure "effective access to the judicial process" for persons with civil rights grievances (H.R.Rep. No. 94-1558, 94th Cong. 2d Sess. p. 1 (1976), quoted in *Hensley* v. *Eckerhart, supra,* 461 U.S. 424, 429-430 [76 L.Ed.2d 40, 47-48, 103 S.Ct. 1933, 1937]). Congress stated in the Senate report: "[A]ll of these civil rights laws depend heavily upon private enforcement and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." (Sen.Rep. No. 94-1011, 2d Sess. p. 2, reprinted in 1976 U.S. Code Cong. & Admin. News 5908, 5910.)

As has been recognized by several courts, if successful civil rights plaintiffs were routinely forced to bear their own attorney's fees, few aggrieved parties would be in a position to advance the public interest by invoking the powers of the courts (*Grooms* v. *Snyder* (N.D.Ind. 1979) 474 F.Supp. 380, 384; *In re Dormio* (1981) 127 Cal.App.3d 788, 793 [179 Cal.Rptr. 669]).

██ Fee denials under section 1988 are reviewable under an abuse of discretion standard (*Sethy* v. *Alameda Cty. Water District* (9th Cir. 1979) 602 F.2d 894, 897, cert. den. 444 U.S. 1046 [62 L.Ed.2d 731, 100 S.Ct. 734]). Congress intended that attorney's fees be awarded to a prevailing plaintiff in a civil rights action absent "special circumstances [which] would render such an award unjust" (Sen.Rep. No. 94-1011, 94th Cong., 2d Sess. p. 4, reprinted in 1976 U.S. Code Cong. & Admin. News 5908, 5912 (quoting *Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400, 402 [19 L.Ed.2d 1263, 1265-1266, 88 S.Ct. 964, 966]); *Hensley* v. *Eckerhart, supra,* 461 U.S. 424, 429-430 [76 L.Ed.2d 40, 47-48, 103 S.Ct. 1933, 1937]; *Serrano IV, supra,* 32 Cal.3d 621, 633). Congress did not specify what "special circumstances" would render an award unjust (*Teitelbaum* v. *Sorenson* (9th Cir. 1981) 648 F.2d 1248, 1249), nor have the federal courts been consistent in identifying these special circumstances.

Some of the circumstances which have been identified as relevant to a court's exercise of discretion in awarding attorney's fees under section 1988

---

[4]Before the *Alyeska* decision, the federal courts did not use a consistent formula to determine when attorney's fees should be awarded on a private attorney general theory to a prevailing plaintiff. Attorney's fees, however, were consistently awarded when the court determined (a) an award of attorney's fees as costs was a remedy necessary to effectuate the congressional underpinnings of a substantive program, and (2) the litigant's individual interest was minor but there was an injury to a broad class and the injury was extensive (*The Private Attorney General in California—An Evolution of the Species* (1981) 18 S.D.L.Rev. 843, 844).

include: (1) whether the defendants acted in good faith (*Aho* v. *Clark* (9th Cir. 1979) 608 F.2d 365, 368, but see *Teitelbaum* v. *Sorenson, supra,* 648 F.2d 1248, 1250: "good faith *by itself* is not a special circumstance justifying a denial of attorney's fees"); (2) whether the plaintiff advanced some *public* interest by the litigation (*Pernas* v. *Parkview Towers Management Corp.* (D.N.J. 1980) 502 F.Supp. 1099, 1106, but see *Valcourt* v. *Hyland* (D.Mass. 1980) 503 F.Supp. 630, 641: "The mere fact that plaintiff's action may not result in direct benefits to others, either the public at large or an otherwise identifiable group, but only in benefits to himself, is not a special circumstance"); (3) the lack of serious threat to constitutional rights or to effectuating congressional policies of high priority (*Naprstek* v. *City of Norwich* (N.D.N.Y. 1977) 433 F.Supp. 1369, 1371, cited with approval in *Nadeau* v. *Helgemoe, supra,* 581 F.2d 277, 279, fn. 3, see also *Staten* v. *Housing Auth. of the City of Pittsburgh* (3rd Cir. 1980) 638 F.2d 599, 605: "If appellant's claims were 'substantial' or not 'frivolous' [citations] they may serve as a basis for attorneys' fees under section 1988"); (4) whether the burden of the attorney's fees will fall on the taxpayers (*Concerned Democrats of Florida* v. *Reno* (S.D.Fla. 1980) 493 F.Supp. 660, 664, but see *Johnson* v. *State of Miss.* (5th Cir. 1979) 606 F.2d 635, 637); (5) whether the plaintiff has the ability to pay his or her own attorney's fees (*Concerned Democrats of Florida* v. *Reno, supra,* 493 F.Supp. 660, 664, but see *Entertainment Concepts, Inc., III* v. *Maciejewski* (7th Cir. 1980) 631 F.2d 497, 507, cert. den. 450 U.S. 919, on remand, 514 F.Supp. 1378); (6) whether the plaintiff's lawsuit contributed to the eventual result (*Riddell* v. *National Democratic Party* (5th Cir. 1980) 624 F.2d 539, 544) or served as a "catalyst" for the vindication of constitutional rights (*Staten* v. *Housing Auth. of the City of Pittsburgh, supra,* 638 F.2d 599, 605); (7) whether the plaintiff filed suit despite the defendant's willingness to negotiate (*Greenside* v. *Ariyoshi* (Hawaii 1981) 526 F.Supp. 1194, 1198); and (8) whether an award of attorney's fees to the plaintiff was contemplated as a part of a settlement (*Aho* v. *Clark, supra,* 608 F.2d 365, 367, but see Fioretti and Convery, *Attorney's Fees under the Civil Rights Act—A Time for Change* 16 J.Mar.L.Rev. 261, 272).

We think the court must exercise its discretion in light of Congress' intent to compensate those plaintiffs who advance the public interest by acting as private attorney generals. "Special circumstances" then must include those circumstances indicating the civil rights plaintiff did not act as a private attorney general, but rather, as an ordinary plaintiff advancing his own private interest as well as other circumstances which would disfavor a shifting of fees.

■■■■ Here, there are special circumstances justifying the denial of fees under section 1988.

First, Kreutzer's action was primarily private in nature—seeking to avoid a nine-month suspension of his entertainment license rather than seeking to establish that San Diego County's licensing procedures were unconstitutional in general. Indeed, he did not challenge the decision of the administrative hearing officer imposing the condition. Any benefit to the public is relatively small since the factual situation here is unusual. It is unlikely there are many persons similarly situated with such a condition in their license.

Second, an award of attorney's fees pursuant to section 1988 was not contemplated when the sheriff's department acceded to Kreutzer's demand. Kreutzer did not bring his petition explicitly pursuant to section 1983 or request attorney's fees under section 1988. Nor did Kreutzer in his petition seek attorney's fees under California's private attorney general provision, Code of Civil Procedure section 1021.5. Kreutzer initially only sought a fee award under Government Code section 800's arbitrary and capricious standard. Thus, it seems a fee award under a private attorney general theory was not contemplated at the time the petition was filed or when the alternate writ issued and the sheriff's department granted the hearings. It was only after all the hearings had been granted that Kreutzer sought a fee award under section 1988. This lack of intent and notice to seek attorney's fees under a private attorney general theory prior to settlement is a factor favoring the denial of an attorney's fee award.

Third, the sheriff's department acted in good faith when denying the license, the denial being based on an erroneous interpretation of the hearing requirements rather than on a wrongful intention to deprive Kreutzer of his constitutional rights. Additionally, the sheriff's department responded quickly to Kreutzer's demand upon the issuance of the alternate writ, thus resulting in an early resolution of the suit before a large amount of attorney's fees were incurred.

In conclusion, viewing all the circumstances together—Kreutzer's acting primarily for his own benefit, the benefit to the public being small, the settlement not contemplating an attorney's fee award under a private attorney general theory, the defendants' good faith and the early resolution of the matter—we do not think this is a situation where fees should be shifted and the taxpayers bear the burden of the prevailing plaintiff's attorney's fees under section 1988. There was no abuse of discretion in the denial of the attorney's fees award.

### IV

Finally, we address the issue of whether Kreutzer is entitled to attorney's fees under Government Code section 800.

Section 800 sets out four conditions for the recovery of attorney's fees: (1) a civil action to appeal or review an administrative proceeding; (2) the complainant must prevail against a public entity or official; (3) arbitrary or capricious action by the public entity or official; and (4) the complainant is personally obligated to pay the fees (*Plumbing etc. Employers Council* v. *Quillin* (1976) 64 Cal.App.3d 215, 221 [134 Cal.Rptr. 332]).

■ The award of attorney's fees under Government Code section 800 is allowed only if the actions of a public entity or official were wholly arbitrary or capricious. The phrase "arbitrary or capricious" encompasses conduct not supported by a fair or substantial reason (*Madonna* v. *County of San Luis Obispo* (1974) 39 Cal.App.3d 57, 62 [113 Cal.Rptr. 916]), a stubborn insistence on following unauthorized conduct (*Midstate Theaters, Inc.* v. *Board of Supervisors* (1975) 46 Cal.App.3d 204, 211 [119 Cal.Rptr. 894]), or a bad faith legal dispute (*Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 457 [129 Cal.Rptr. 216]). The determination of whether an action is arbitrary or capricious is essentially one of fact, within the sound discretion of the trial court (*Mitchell* v. *State Personnel Bd.* (1979) 90 Cal.App.3d 808, 814 [153 Cal.Rptr. 552]).

■ Here, Walsh denied the hearing based on rationally, though erroneously, interpreting the immediate suspension condition of Kreutzer's license to permit an immediate suspension without a prior hearing. While this interpretation was clearly erroneous, there is nothing to suggest the action taken was arbitrary or capricious (see *Marin Hospital Dist.* v. *Department of Health* (1979) 92 Cal.App.3d 442, 450 [154 Cal.Rptr. 838]).

Judgment affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied April 2, 1984, and appellant's petition for a hearing by the Supreme Court was denied May 24, 1984.