Filed 10/19/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff and Appellant,<br>v.<br><br>SHERI ATKINSON et al.,<br><br>        Defendants and Respondents. | A166145<br><br>(Alameda County<br>Super. Ct. No. RG21103437) |

John Doe was suspended for a year from the University of California, Davis (UC Davis), for violating its policy against sexual violence and harassment. He challenged the decision by filing a petition for a writ of administrative mandate against the Regents of the University of California (Regents) and Dr. Sheri Atkinson, Ed.D., the associate vice chancellor of student affairs at UC Davis (collectively, respondents). The trial court issued a writ overturning the one-year suspension, concluding that it was "objectively unreasonable" in light of Doe's conduct.

Doe then unsuccessfully moved for attorney fees under Code of Civil Procedure section 1021.5 (section 1021.5) and Government Code section 800 (section 800). In this appeal from the order denying attorney fees, he claims the trial court erred by determining he was not entitled to an award under either statute.

We conclude the trial court properly denied attorney fees under section 1021.5 on the basis that the litigation did not confer "a significant

benefit . . . on the general public or a large class of persons."  But we also conclude the court applied an incorrect legal standard in denying fees under section 800, which authorizes an award of up to $7,500 if the challenged administrative determination "was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof."  In doing so, we hold that—contrary to the court's supposition—all aspects of an administrative proceeding need not be arbitrary or capricious to justify attorney fees under section 800.  Thus, we affirm the denial of fees under section 1021.5, vacate the denial of fees under section 800, and remand for the court to reconsider whether respondents engaged in sufficient arbitrary or capricious conduct to warrant a section 800 award.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

From November 2019 to June 2020, Doe, a junior at UC Davis, had a consensual sexual relationship with Jane Roe, a senior.[1]  In November 2019, while the two were having sex in Doe's room, Doe made a one-second video recording of his own face.  Roe "saw a flash" and asked Doe to show her his camera roll, at which point she saw a video file.  She did not want to see the video and asked him to delete it, which he did.

About nine months after the incident, Roe made a formal complaint against Doe.  Doe initially lied to the UC Davis investigator by claiming he was "checking his phone during sex because he was getting a notification on it," but he ultimately admitted to taking the one-second recording of himself

---

[1] We draw much of our discussion of the underlying facts and the administrative proceeding from the trial court's order granting the writ.

2

so he could "see what he looked like during the sex act." The recording was never produced.

The investigator determined that Doe had violated UC Davis's Sexual Violence and Sexual Harassment Policy by recording video "depicting [a] person's nudity or sexual acts in a place where that person has a reasonable expectation of privacy" without consent. The investigator also concluded that Doe had violated another UC Davis policy that more generally bars nonconsensual recordings that violate another person's privacy.

In February 2021, UC Davis notified Doe of its preliminary determination to suspend him for one year. He sought a formal hearing, which occurred that April. After hearing testimony from several witnesses, including Doe and Roe, the hearing officer concluded by a preponderance of the evidence that " '[Doe] made a video recording depicting [Roe's] sexual acts, without [her] affirmative consent, and in a location where [she] had a reasonable expectation of privacy.' " Based on the hearing officer's decision, UC Davis reaffirmed that a one-year suspension was appropriate.

Doe filed an internal appeal. At this point, Dr. Atkinson became involved. She "rejected the appeal . . . but adjusted Doe's suspension" so that it would run from summer 2021 through spring 2022, meaning his coursework from the 2021 spring quarter could "count toward his degree." Since Doe was set to graduate in spring 2021, this "result[ed] in withholding his degree until" spring 2022.

In June 2021, shortly after his internal appeal was denied, Doe filed a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5 seeking to overturn the findings and sanction against him. The trial court found that UC Davis's Title IX procedure was "consistent with

due process standards" and did not violate Doe's rights.[2]  But it agreed with Doe that respondents abused their discretion by imposing a one-year suspension because the sanction was "objectively excessive and punitive."

Specifically, the trial court concluded that UC Davis's "rationale for its imposition of penalties fell short in this case."  None of the factors under UC Davis policy that bore on the appropriate sanction weighed against Doe, given the lack of evidence that he even captured Roe on video, either visually or audibly; that he shared the video with anyone; that he was violent or took advantage of her; or that he acted with ill intent.  Rather, his credibility appeared to be "the one key factor that led to his extended suspension."  Moreover, the suspension could not be justified on the grounds of protecting Roe, who had already graduated by the time the hearing occurred.  Finally, there was no indication of "why the student in this case might be suspended for a year while a student in another might be suspended for two years or a student in a different case might not be suspended at all."  Noting its findings in a prior case involving the Regents, the court stated that they "can and must do more to explain in the administrative record of their Title IX cases why a particular form of discipline is being imposed and why that sanction is not disproportionate when measured against the sanction imposed in other cases."

Accordingly, in February 2022, the trial court entered judgment in Doe's favor and issued a peremptory writ of administrative mandate directing

---

[2] "Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.) is a federal civil rights law that prohibits discrimination based on gender in education programs or activities that receive federal funding.  (See 34 C.F.R. § 106.1 et seq. (2019).)" (*Doe v. Occidental College* (2019) 40 Cal.App.5th 208, 217, fn. 2.)  The law affects federally funded universities' consideration of sexual misconduct complaints.  (See *Boermeester v. Carry* (2023) 15 Cal.5th 72, 78.)

the Regents to "set aside the administrative sanction imposed against [Doe] forthwith." The following month, respondents filed a return stating that Dr. Atkinson had "directed the [UC Davis] Registrar . . . to remove any reference to the one-year suspension from Doe's academic transcript and confirmed that removal was completed." Then, as set forth in a letter from Dr. Atkinson to Doe, UC Davis imposed a shorter suspension, from summer 2021 through fall 2021.

In April 2022, Doe moved to enforce the writ, claiming that respondents violated the trial court's order by imposing the new sanction. He pointed out that the shorter suspension would still make his graduation date June 2022, not June 2021, "leav[ing] a year-long gap on his academic transcript during which [he] did not take any classes, closely resembling a suspension." Respondents initially opposed the motion, but after meeting and conferring with Doe, they agreed to "(i) vacate the reduced five-month suspension sanction, (ii) . . . not . . . further sanction [Doe], and (iii) retroactively issue [his] degree to June 2021." In May 2022, based on the parties' stipulation, the trial court issued an order requiring respondents to do the same.

Shortly afterward, Doe filed a motion for attorney fees of $142,387.48 under section 1021.5 and $7,500 under section 800. Respondents opposed the motion, and the trial court denied it. As to the section 1021.5 request, the court determined that this lawsuit satisfied "the preliminary requirement of . . . 'enforcement of an important right affecting the public interest' " but "none of the other [statutory] requirements." In particular, the lawsuit did not confer a significant benefit on the public or a large class of persons because it did not correct an overarching UC Davis policy or "ongoing pattern of abuse." The action was made necessary by Doe's "own questionable behavior" and was "not a disinterested one seeking to vindicate the rights of

5

college students." Doe also failed to show that the necessity and burden of private enforcement made attorney fees appropriate, because he did not present any evidence showing the action " 'transcended [his] financial interests and imposed a financial burden disproportionate to [his] individual stake in the matter.' "

As to the section 800 request, the trial court concluded that although the original suspension "lacked sufficient findings to support it and was objectively unduly punitive," it did not "rise[] to the level of misconduct required by section 800." In reaching its conclusion, the court relied on case law stating that the official conduct must be "wholly arbitrary or capricious." (*Kreutzer v. County of San Diego* (1984) 153 Cal.App.3d 62, 78 (*Kreutzer*).) The court acknowledged that "[t]he lack of reasoning or fact-finding to support the penalty imposed on [Doe] was, in a sense, arbitrary," but it reiterated that "the procedure used by UC Davis in this case was 'generally appropriate' and complied with recent California case law concerning due process in student discipline cases under Title IX." Thus, the court concluded that "[r]espondents' investigation was not <u>wholly</u> arbitrary and capricious" under *Kreutzer*.

## II.
### DISCUSSION

A. *Doe Is Not Entitled to Attorney Fees Under Section 1021.5.*

Doe claims the trial court erred by denying his request for attorney fees under section 1021.5. We conclude the court properly denied fees on the basis that Doe failed to meet the statutory requirement that "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons" (the significant-benefit requirement). (§ 1021.5.) Thus, we need not consider whether he met the other requirements for an award under the statute.

6

Section 1021.5, " 'a codification of the "private attorney general" doctrine, recognizes that "privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." ' " (*McCormick v. Public Employees' Retirement System* (2023) 90 Cal.App.5th 996, 1003 (*McCormick*).) Thus, " ' " 'the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' " ' " (*Ibid.*)

Section 1021.5 authorizes a court to "award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." As the party seeking an award, Doe has the burden to show he meets all of section 1021.5's requirements. (*McCormick*, *supra*, 90 Cal.App.5th at p. 1004.)

Whether the trial court erred by denying attorney fees under section 1021.5 "implicates 'a mixed standard of review.' " (*Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1107.) First, we review de novo " 'whether the . . . court applied the proper legal standards,' paying 'particular attention to the . . . stated reasons for denying fees.' " (*Doe v. Westmont College* (2021) 60 Cal.App.5th 753, 763 (*Westmont College*); *Friends of Spring Street*, at p. 1107.) Second, we review for an abuse of discretion

7

whether the court's " 'application [of the proper legal standards] to the facts of th[e] case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute.' " (*Friends of Spring Street*, at p. 1107.)

For purposes of this appeal, we need address only the significant-benefit requirement. In analyzing this requirement, a court should perform "a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 939–940.) "The extent of [the significant] benefit ' " 'need not be great,' " ' '[n]or is it required that the class of persons benefited be " 'readily ascertainable.' " ' . . . While section 1021.5 does not permit awards 'for litigants motivated by their own interests who coincidentally serve the public' [citation], 'fees may not be denied merely because the primary effect of the litigation was to benefit the individual rather than the public.' " (*Westmont College*, *supra*, 60 Cal.App.5th at pp. 764–765.)

Initially, we address Doe's claim that the trial court applied the wrong legal standard because it "fixat[ed] . . . on [his] individual interest" to conclude that he did not meet the significant-benefit requirement. A plaintiff's "subjective motivations in pursuing the litigation are simply not relevant" to whether the action conferred the requisite benefit. (*City of Maywood v. Los Angeles Unified School Dist.* (2012) 208 Cal.App.4th 362, 429, fn. 32; accord *Friends of Spring Street v. Nevada City*, *supra*, 33 Cal.App.5th at p. 1110.) According to Doe, the court contravened this principle by citing case law "for the proposition that [he] needed to be an entirely 'disinterested' party 'seeking to vindicate the rights of college students.' " The court said no such thing. Rather, after stating that Doe had

8

not helped change the law or obtained far-reaching relief, the court continued that "[t]his case was *also* not a disinterested one seeking to vindicate the rights of college students." (Italics added.) Thus, the court was merely giving another reason that the action did not convey a significant benefit, not holding that Doe had to be disinterested to qualify for attorney fees under section 1021.5.

Doe also claims the trial court inaccurately assessed the effects of this litigation by "focus[ing] on its determination that '[he did not] help[] strike down a statute violating the rights of college students' " and "believ[ing] that [he] failed 'to obtain relief beyond his own "unique factual circumstances." ' " According to him, the action enforced students' "right to due process, fair university administrative procedures, and compliance with the University of California's systemwide policies and procedures," thereby "extend[ing] a significant benefit to all 294,000 UC students[,] any of whom could face accusations that lead to discipline."[3]

The trial court did not err in assessing the impact of the relief it granted. As respondents point out, the court rejected Doe's claim that UC Davis's procedures violated due process in various respects, and it granted relief only because the particular sanction imposed on Doe was objectively unreasonable under the circumstances. True, in its order the court referred to a previous case in which it determined that the Regents had

---

[3] Doe also argues that this litigation conferred a significant benefit on University of California students and the general public based on his motion to enforce respondents' compliance with the writ, whose outcome "set a clear standard for colleges and universities that have similarly disregarded court orders." He does not cite any authority to support this argument, and we are not persuaded that successful enforcement of a disposition that did not otherwise confer a significant benefit is sufficient to satisfy the significant-benefit requirement.

9

fallen short of justifying a particular sanction and "wonder[ed] whether the Regents can avoid repeating the errors made here by modifying the hearing procedure." But the writ directed only that the Regents "set aside the administrative sanction imposed against [Doe] forthwith," not that they formally change any of their Title IX procedures.

Thus, the trial court's ruling is hardly "a ringing declaration of the rights of all" University of California students. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 167; *Ryan v. California Interscholastic Federation* (2001) 94 Cal.App.4th 1033, 1045.) Although litigation that enforces existing legal duties *may* confer a significant benefit, it is insufficient, standing alone, that the ruling here enforced respondents' obligation to impose a reasonable sanction on disciplined students. (See *McCormick*, *supra*, 90 Cal.App.5th at pp. 1006–1007.) In fact, the grant of relief "under the limited factual circumstances shown here" primarily benefited Doe, by undoing his suspension. (*Pacific Legal Foundation*, at p. 167.) As such, it is more akin to grants of relief premised on the lack of evidence supporting a challenged decision, which generally do not satisfy the significant-benefit requirement, than to those premised on broader violations of constitutional or statutory rights. (See, e.g., *Roybal v. Governing Bd. of Salinas City Elementary School Dist.* (2008) 159 Cal.App.4th 1143, 1149–1150 [writ based on "failure of proof" justifying plaintiffs' termination did not confer significant benefit on other employees]; *Ryan*, at pp. 1045–1046 [no significant benefit where "case was simply a substantial evidence matter involving [plaintiff's] personal interests"].)

Because of the limited basis on which Doe obtained relief, this case is distinguishable from *Westmont College*, another decision addressing section 1021.5 in the Title IX context. There, a student obtained an

10

administrative writ overturning his college's determination that he committed sexual assault, because the trial court concluded the college did not give him a fair hearing. (*Westmont College*, *supra*, 60 Cal.App.5th at p. 759.) The college appealed, and the Second District Court of Appeal "affirmed the judgment in a published opinion, agreeing that [the college] failed to provide [the student] with a fair hearing." (*Ibid.*) The trial court denied the student's motion for attorney fees under section 1021.5, and in a subsequent opinion the Second District vacated the order. (*Westmont College*, at pp. 762, 768.) In doing so, the appellate court concluded the student met the significant-benefit requirement in part because he "helped to ensure that [the college] complies with its own fair hearing policies and procedures," which extended benefits to not just the student but also "sexual assault victims, those accused of such assaults, and the personnel who investigate and adjudicate the accusations."[4] (*Id.* at p. 765.)

Here, in contrast, the group of people other than Doe who could benefit from the trial court's grant of writ relief is much smaller. At best, the court's ruling helped ensure that University of California schools will impose reasonable sanctions in future Title IX cases. That might help students found to have violated policies against sexual assault and harassment, but we do not see how it would benefit all students accused of such conduct, much less victims or school personnel. Given the relatively small number of students potentially affected by how the appropriate sanction is assessed, not to mention the necessarily fact-based nature of that assessment, we cannot

---

[4] *Westmont College* also relied on the fact that the student's defense of the judgment in his favor resulted in a prior published opinion, "which 'alone support[ed] the conclusion that the result was of significant statewide public interest.'" (*Westmont College*, *supra*, 60 Cal.App.5th at p. 765.) Of course, the same is not true here.

say the trial court abused its discretion by concluding that this litigation did not meet the significant-benefit requirement.

> B. *Remand Is Required for the Trial Court to Reconsider Whether Doe Is Entitled to Attorney Fees Under Section 800.*

Doe also claims the trial court erred by denying attorney fees under section 800, which applies when a party successfully challenges an administrative decision that "was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof." (§ 800, subd. (a).) We conclude the court applied an incorrect legal standard in ruling, and we therefore remand for it to reconsider under the proper standard whether an award under section 800 is appropriate.

Under section 800, subdivision (a), if a plaintiff prevails "[i]n any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law" and "it is shown that the award, finding, or other determination of the proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in [the officer's] official capacity," the plaintiff "may collect from the public entity reasonable attorney's fees . . . not to exceed . . . $7,500 . . . if [the plaintiff] is personally obligated to pay the fees in addition to any other relief granted or other costs awarded."

" 'The determination of whether an action is arbitrary or capricious is essentially one of fact,' " which we review for an abuse of discretion. (*Halaco Engineering Co. v. South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 79 (*Halaco*).) But "[a]ny exercise of discretion must rest on correct legal premises, . . . and in that respect our review is de novo." (*Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 25; see *Robinson v City of Chowchilla* (2011) 202 Cal.App.4th 382, 391 [applying incorrect legal standard necessarily constitutes abuse of discretion].) In particular, to the extent "the

12

propriety of the award [of attorney fees] turns on an issue of statutory interpretation . . . , the issue is reviewed de novo as a question of law." (*Department of Fair Employment & Housing v. Cathy's Creations, Inc.* (2020) 54 Cal.App.5th 404, 412.)

In *Kreutzer*, the primary decision on which the trial court relied, the Fourth District Court of Appeal stated that a prevailing party is entitled to attorney fees under section 800 "only if the actions of a public entity or official were *wholly* arbitrary or capricious." (*Kreutzer*, *supra*, 153 Cal.App.3d at p. 78, italics added.) The decision then explained that "[t]he phrase 'arbitrary or capricious' encompasses conduct not supported by a fair or substantial reason [citation], a stubborn insistence on following unauthorized conduct [citation], or a bad faith legal dispute [citation]." (*Ibid.*) *Kreutzer*'s characterization of the standard has been quoted numerous times in cases addressing section 800, including by our state Supreme Court. (E.g., *Halaco*, *supra*, 42 Cal.3d at p. 79; *Lafayette Bollinger Development LLC v. Town of Moraga* (2023) 93 Cal.App.5th 752, 791; *Reis v. Biggs Unified School Dist.* (2005) 126 Cal.App.4th 809, 823.)

We agree with Doe that the trial court improperly denied attorney fees on the basis that "[r]espondents' investigation was not <u>wholly</u> arbitrary and capricious," since it generally complied with due process. To begin with, we are not convinced that *Kreutzer* was correct when it stated that official conduct must be "wholly arbitrary or capricious" to support an award under section 800. (*Kreutzer*, *supra*, 153 Cal.App.3d at p. 78.) The statute itself states that the administrative decision must be "the result of arbitrary or capricious action or conduct" (§ 800, subd. (a)), and *Kreutzer* cited no authority supporting its insertion of the word "wholly." Given *Kreutzer*'s later observation that even a "clearly erroneous" decision is not "arbitrary or

13

capricious," the word "wholly" may have been meant merely to emphasize that the official conduct must be unreasonable, not just incorrect. (*Kreutzer*, at p. 78.)

But even if "wholly arbitrary or capricious" is the correct legal standard, the trial court misapplied it here. Whatever the phrase's precise meaning, it does not mean that *all* the official actions leading to the administrative "award, finding, or other determination" must be arbitrary or capricious. (§ 800, subd. (a).) Certainly, nothing in section 800's language supports such a principle, as the statute requires only that the challenged determination—here, the decision to suspend Doe for a year—be "the result of arbitrary or capricious action or conduct." (*Ibid.*) Otherwise, attorney fees would almost never be warranted under section 800, since they could be denied so long as *some* aspect of the official decisionmaking process was reasonable or rational. As a result, the court erred by concluding that even though the penalty imposed on Doe was arbitrary and lacked justification, it was not the result of wholly arbitrary and capricious conduct because the procedures respondents followed were generally lawful.

Usually, when a trial court applies the incorrect legal standard in exercising its discretion, the appropriate disposition is to remand for the court to apply the proper standard. (See, e.g., *Westmont College, supra,* 60 Cal.App.5th at p. 768.) Here, the rulings granting writ relief and denying attorney fees contain language suggesting the trial court effectively found that the one-year suspension resulted from arbitrary or capricious action, including its statements that the sanction was "objectively unreasonable" and "in a sense, arbitrary," because of "[t]he lack of reasoning or fact-finding to support [it]." (See *Kreutzer, supra,* 153 Cal.App.3d at p. 78.) Nonetheless, we decline to direct the court to award fees under section 800 or, as Doe

14

suggests, make an award ourselves.  Since whether official conduct is arbitrary or capricious is a fact determination, and in any case the court has not yet evaluated Doe's attorneys' billing records, we conclude the better course is to remand for the court to reevaluate Doe's entitlement to attorney fees under section 800.

III.
DISPOSITION

The August 15, 2022 order denying attorney fees is affirmed in part and vacated in part.  The matter is remanded to the trial court with directions to reconsider whether Doe is entitled to attorney fees under Government Code section 800 and, if so, in what amount.  The parties shall bear their own costs on appeal.

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Getty, J.*


*Judge of the Superior Court of the County of Solano, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*Doe v. Atkinson et al.*  A166145

16

Trial Court:

Superior Court of the County of Alameda


Trial Judge:

Hon. Michael M. Markman


Counsel:

Hathaway Parker, Mark M. Hathaway, Jenna E. Parker, for Plaintiff and Appellant


Quarles & Brady LLP, Sandra L. McDonough, Joanne Alnajjar Buser, for Defendants and Respondents

*Doe v. Atkinson et al.* A166145