[No. C046351. Third Dist. Feb. 9, 2005.]

TONY REIS, Plaintiff and Respondent, v.
BIGGS UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

COUNSEL

California Education Legal Services, Thomas M. Griffin, David E. Robinett; Girard & Vinson and David E. Robinett for Defendant and Appellant.

Langenkamp & Curtis, Carolyn Brown Langenkamp and Lesley Beth Curtis for Plaintiff and Respondent.

OPINION

**DAVIS, Acting P. J.**—" '[E]ntry into the Education Code is painful.' " (*Zalac v. Governing Bd. of Ferndale Unified School Dist.* (2002) 98 Cal.App.4th 838, 842 [120 Cal.Rptr.2d 615] (*Zalac*).) To decide the issues in this case, we must feel that pain.

In March 2003, the Biggs Unified School District (the District) gave Tony Reis notice it was not reelecting him to two part-time teaching positions: a .57 full-time equivalent (FTE) position, in which Reis taught agriculture in the regular educational programs of the school, and a .43 FTE position, in which Reis taught in the District's regional occupational program (ROP).[1] Claiming he was "a tenured teacher in a 1.0 full-time equivalent position," Reis filed a petition for a writ of mandate in the superior court, arguing he had "the legal right to continue on in the employ of the District" and seeking to compel the District to provide him with an assignment and a salary for the next school year.

The trial court granted Reis's petition, concluding Reis had obtained permanent status in both of his positions. The trial court also awarded Reis attorney fees under Government Code section 800 based on the District's nonreelection of him to the .57 FTE position because the District offered the court "no rationale or defense" for its action with respect to that position.

On appeal, the District contends the trial court erroneously concluded that the period of time Reis worked as an ROP teacher counted toward permanent status of his .43 FTE position; the District claims section 44910 bars this result. We agree with the District. We conclude that Reis was not a regular teacher who was "subsequently assigned" to the ROP position, and therefore did not fall within the relevant exception to section 44910. The District

---

[1] The purpose of a regional occupational program is "to provide education and training in career technical courses." (Ed. Code, § 52301, subd. (a).) (Further undesignated section references are to the Education Code.)

further challenges the attorney fee award as based on insufficient evidence and contrary to existing case law. We disagree with this challenge; the District acted arbitrarily in not reelecting Reis to his .57 FTE permanent position. Consequently, we reverse that part of the judgment regarding the permanency of Reis's .43 position and affirm in all other respects.

BACKGROUND

■ Because the District failed to file an answer or any other responsive pleading to Reis's verified amended petition for writ of mandate, the facts alleged in the petition are uncontroverted and deemed true.[2] (*Sehlmeyer v. Department of General Services* (1993) 17 Cal.App.4th 1072, 1075, fn. 1 [21 Cal.Rptr.2d 840].)

In 1997, Reis obtained a "Full Time Preliminary Designated Subjects Vocational Educational Teaching Credential" in the subject of agricultural mechanics. This credential is not a provisional or emergency credential. Reis has maintained this credential since that time.

In August 1997, Reis began working for the District. As relevant here, during the 1997–1998 school year, Reis filled two positions. He taught in a "regular" agriculture position as a .57 FTE teacher. Additionally, he performed maintenance in a .43 FTE noncertificated position. At the outset of the school year in August 1997, the District notified Reis in a written employment contract that he was a "Probationary I" employee in his .57 FTE position.

During the 1998–1999 school year, Reis continued his work as a .57 FTE teacher in the regular education program of the school teaching agriculture. He also served as an ROP teacher in a .43 FTE position. His employment contract from July 1998, which covered both positions without mentioning them separately, notified Reis that he was "hereby classified as a Probationary II employee. This is considered a temporary assignment. Regional Occupation Program is funding 43%." A salary notice issued in September 1998, shortly after the beginning of the school year, however, showed that Reis's status was a "Probationary 1" employee in the .43 FTE position and a "Probationary 2" employee in the .57 FTE position.

During the 1999–2000 school year, the District reemployed Reis in these same two positions. In August 1999, Reis received a certificate congratulating him "upon receiving tenure as a member of the instructional staff of Biggs

---

[2] The District filed only an unverified opposition to Reis's petition, which was in the nature of a memorandum of points and authorities.

High School." In his employment contract, which was dated September 1999, the District notified Reis that he was "classified as a Tenured .57 FTE and Temporary .43 FTE Teacher."

During the 2000–2001 school year, the District once again employed Reis in the same two teaching positions. Reis's petition contains no allegation regarding any notice he received or did not receive about his status in the .43 FTE position during the 2000–2001 school year.

During the 2001–2002 school year, Reis continued in the same two teaching positions. In his employment contract from July 2001 and in a salary notice issued in August 2001, the District again informed Reis that his status was "temporary" in his .43 FTE teaching position.

Reis repeated these assignments during the 2002–2003 school year. During that school year, the District did not give Reis a written contract and failed to notify him that it considered him anything other than a fully tenured teacher.[3] In March 2003, however, the District sent Reis notice that it was not reelecting him to either of his two positions.

Reis's attorney sent a letter to counsel for the District, asserting that Reis was a tenured employee, at least in his .57 FTE position, and thus could not be terminated in this fashion.[4] The District did not rescind its actions, nor did it respond to counsel's letter. Accordingly, in July 2003, Reis filed a writ petition in the superior court.

Based on an analysis we describe below, the trial court concluded Reis was a tenured employee of the District in both the .57 and the .43 positions and ordered the District to reinstate Reis and provide him with a teaching assignment and salary for the 2003–2004 school year and each year thereafter. It further concluded the District's actions concerning Reis's .57 FTE

---

[3] The District attached to its unverified opposition to Reis's writ petition a salary notice Reis purportedly signed at the beginning of the 2002–2003 school year, which showed Reis's status in his .43 FTE position as "temporary." Because the District failed to file a verified answer to the petition, however, the trial court properly disregarded this salary notice, and other evidence offered by the District, in ruling on the petition.

[4] It appears the District initially took the position that it could decline to reelect Reis to his .57 FTE position because his credential was provisional and therefore he never attained permanent status in that position. The District never sought to advance this argument in court, however, and in fact never responded to the assertion by Reis's attorney that his credential was not provisional—an assertion Reis backed up with evidence in support of his writ petition.

position were arbitrary and capricious within the meaning of Government Code section 800 and ordered the District to pay Reis up to $7,500 in attorney fees. The District appeals.

DISCUSSION

### 1. Standard of Review

■ "[A] trial court's findings and judgment on a petition for writ of mandate are upheld if supported by substantial evidence. [Citation.] However, the trial court's construction of a statute is purely a question of law and is subject to de novo review on appeal." (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375 [119 Cal.Rptr.2d 642] (*California Teachers Assn.*).)

### 2. Reis Did Not Attain Permanent Status in His .43 FTE Position As an ROP Teacher

The District contends the trial court erroneously concluded that Reis was a permanent teacher in his .43 FTE position.[5] We agree with the District.

#### A. The Relevant Law

■ " 'The Education Code establishes four possible classifications for certificated employees: permanent, probationary, substitute and temporary.' [Citation.] The code authorizes the governing boards of school districts to hire, classify, promote and dismiss certificated employees (i.e., teachers) (see § 44831), but establishes a complex and somewhat rigid scheme to govern a board's exercise of its decisionmaking power. The date on which a certificated employee is first classified within one of these four employment categories is often critical, for such status has ramifications for both the teacher and the district throughout the employment relationship. . . . [¶] A certificated teacher's classification also governs the level of statutory job protection the teacher enjoys and controls the level of procedural protections that apply if he or she is not reelected. In general, permanent employees may not be dismissed unless one or more statutorily enumerated grounds are shown. (§ 44932.) . . . 'Substitute and temporary employees, on the other hand, fill the short range needs of a school district and generally may be summarily released.' " (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916–917 [129 Cal.Rptr.2d 811, 62 P.3d 54].)

---

[5] As in the trial court, the District raises no argument about Reis's permanent status in his .57 FTE position.

■ A teacher generally obtains permanent status after two years of continuous employment as a probationary teacher in a position requiring certification upon his or her reelection to the district for the third consecutive year. (§ 44929.21, subd. (b).)[6] Once a certificated employee has fulfilled the statutory prerequisites for permanent status, a teacher's rights are vested automatically as a matter of law independent of any action by the employing district. (*Kamin v. Governing Board* (1977) 72 Cal.App.3d 1014, 1017–1018 [139 Cal.Rptr. 853].) Further, under section 44924, "any contract or agreement, express or implied, made by any employee to waive the benefits" of these provisions is void. (*Zalac, supra,* 98 Cal.App.4th at p. 849 & fn. 11.)

■ Under section 44915, school districts must "classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees." Under section 44916, that classification must "be made at the time of employment and thereafter in the month of July of each school year." Section 44916 further provides: "At the time of initial employment during each academic year, each new certificated employee of the school district shall receive a written statement indicating his employment status and the salary that he is to be paid. If a school district hires a certificated person as a temporary employee, the written statement shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed. If a written statement does not indicate the temporary nature of the employment, the certificated employee shall be deemed to be a probationary employee of the school district, unless employed with permanent status."

■ Teachers are also provided with an added protection under section 44918, subdivision (a). Under that section, a temporary employee who performs the duties normally required of a certificated employee for at least 75 percent of the number of regular school days in a school year and who is

---

[6] Subdivision (b) of section 44929.21, which applies to "probationary employees whose probationary period commenced during the 1983–84 fiscal year or any fiscal year thereafter," provides, in relevant part: "(b) Every employee of a school district of any type or class having an average daily attendance of 250 or more who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district. [¶] The governing board shall notify the employee, on or before March 15 of the employee's second complete consecutive school year of employment by the district in a position or positions requiring certification qualifications, of the decision to reelect or not reelect the employee for the next succeeding school year to the position. In the event that the governing board does not give notice pursuant to this section on or before March 15, the employee shall be deemed reelected for the next succeeding school year."

employed as a probationary employee during the following year is deemed to have served a complete school year as a probationary employee in the initial year. (§ 44918, subd. (a).)[7]

Finally, section 44910 provides: "Service by a person as an instructor in classes conducted at regional occupational centers or programs, as authorized pursuant to Section 52301, shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district. [¶] This section shall not be construed to apply to any regularly credentialed teacher who has been employed to teach in the regular educational programs of the school district and subsequently assigned as an instructor in regional occupational centers or programs, nor shall it affect the status of regional occupational center teachers classified as permanent or probationary at the time this section becomes effective."

■ Thus, under section 44910 (standing alone), service as an ROP teacher cannot be counted as part of the two probationary years needed to attain permanent status, unless one of the two exceptions in that statute applies.

B. *Analysis*

The District contends the trial court erred in concluding that Reis's .43 FTE position is permanent because that conclusion fails to give effect to section 44910. Reis, on the other hand, argues that he falls within one of the exceptions to section 44910's limit on his ability to accrue permanent status (tenure). As a result, he argues he began to accrue credit toward a permanent .43 FTE position when he started teaching the ROP in 1998. Based on our interpretation of section 44910, we conclude that Reis does not fall within either of the exceptions provided in that section, and therefore the section bars him from achieving permanent status in the .43 FTE position.

■ In interpreting statutes, " '[c]ourts must ascertain legislative intent so as to effectuate a law's purpose. [Citations.] "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what

---

[7] Section 44918 provides, in part: "(a) Any employee classified as a substitute or temporary employee, who serves during one school year for at least 75 percent of the number of days the regular schools of the district were maintained in that school year and has performed the duties normally required of a certificated employee of the school district, shall be deemed to have served a complete school year as a probationary employee if employed as a probationary employee for the following school year." .

has been inserted; . . ." [Citation.] Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] " '[If the language is ambiguous,] [t]he court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' " [Citations.] "Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' " (*California Teachers Assn.*, *supra*, 98 Cal.App.4th at pp. 375–376, italics omitted; accord, *Department of Fish & Game v. Anderson-Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554, 1562 [11 Cal.Rptr.2d 222].)

Under the first paragraph of section 44910, "[s]ervice by a person as an instructor in classes conducted at regional occupational centers or programs . . . *shall not* be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district." (Italics added.)

The second paragraph of section 44910, however, contains two exceptions to the restriction in the first paragraph. The first exception states that section 44910's restriction on the use of ROP service toward achievement of permanent status does not apply to "any regularly credentialed teacher who has been employed to teach in the regular educational programs of the school district and *subsequently assigned* as an instructor in regional occupational centers or programs[.]" (§ 44910, 2d par., italics added.) (The second exception exempts from the section 44910 restriction "regional occupational center teachers classified as permanent or probationary at the time this section becomes effective." (§ 44910.) This exception does not apply here, because section 44910 became effective in 1977, long before the District first employed Reis. (Stats. 1976, ch. 1010, § 2, pp. 2384, 3432).)

Reis contends that the first exception of section 44910 applies to him. According to Reis, he was "a regularly credentialed teacher who taught first in the regular programs of the District and was *subsequently assigned* to teach ROP programs" because during the 1997–1998 school year—the year before he first taught as an ROP instructor—Reis taught "in a 'Regular' agriculture .57 [FTE] position." (Italics added.) Thus, according to Reis, his time spent teaching as an ROP instructor counted toward permanent status.

The District counters that the first exception does not apply to Reis because, with respect to his .43 FTE position, he was "not assigned out from a regular teaching position into an ROP position," but instead was assigned

"a second, concurrent position in an ROP program." The District contends this exception was "intended to protect those employees who are involuntarily moved from their regular position *into* an ROP position as a means of bypassing their right to accrue tenure," and Reis is not such an employee.

The question is whether the Legislature intended that a teacher such as Reis, who retains his part-time regular teaching position but is assigned an additional part-time ROP teaching position, falls within the first exception of section 44910. We conclude no.

Reis was a "regularly credentialed teacher who [was] employed to teach in the regular educational programs of the school district." (§ 44910, 2d par.) This is so because he taught in the regular educational programs of the District during the 1997–1998 school year in a .57 FTE position, and *continued* to teach in that position during the 1998–1999 school year. Thus, there was no change to his .57 FTE regular teaching position, only the *addition* of a .43 FTE position as an ROP teacher starting in the 1998–1999 school year. It must also be remembered that this .43 FTE position was not entirely new, but actually followed Reis's service in a .43 FTE noncertificated maintenance position during the 1997–1998 school year.

We conclude that the pivotal language in the first exception of section 44910, "subsequently assigned," is ambiguous. The basic definition of "subsequent" is "following in time, order, or place." (Merriam-Webster Collegiate Dict. (10th ed. 2000) p. 1170, col. 1.) "Assigned" means "to [be] appointed[ed] to a post or duty." (*Id.*, p. 69, col. 2.) This basic definition of "subsequent" provides room for competing meanings for the language "subsequently assigned." Since Reis's .43 ROP assignment followed his .57 regular teaching position in time only, and not in order, or place, one must look to the statute itself to see if there is other language clarifying whether the term "subsequently" is being used in the first rather than the other two ways. There is none. We therefore turn to other sources to address the ambiguity. That exercise convinces us that Reis's additional assignment to the .43 ROP position does not fit under the first exception provided in section 44910.

The legislative history of section 44910 shows that it was designed to allow school districts more flexibility in operating their ROP's. (Assem. Com. on Ed., Rep. on Assem. Bill No. 292 (1973–1974 Reg. Sess.) May 2, 1973 (Assembly Report).)[8] Under preexisting law, an ROP teacher, like other teachers, could attain permanent status after three years of service as a probationary

---

[8] We grant the District's request to take judicial notice of various documents from the legislative history of Assembly Bill No. 292 (1973–1974 Reg. Sess.), which became former section 13330, the predecessor of section 44910.

teacher. (*Ibid.*) But because ROP's involve "education and training in career technical courses" (§ 52301, subd. (a)), an ROP teacher may have only "specialized training." (Assembly Report, *supra.*) Furthermore, it was perceived that "to meet and adjust to the rapidly changing needs of our technical society, it ha[d] become necessary to initiate new training programs and phase out programs for which there [wa]s no longer a need in terms of employment opportunities." (Los Angeles Unified Sch. Dist., Statement Regarding Assem. Bill No. 292 (1973–1974 Reg. Sess.) as amended Apr. 26, 1973.) If a particular program was dropped, but the teacher in that program had acquired permanent status, the teacher could be "virtually untransferable to another teaching assignment within the district." (Assembly Report, *supra.*)

Therefore, section 44910 was designed to prevent these specialized, virtually untransferable ROP teachers from becoming permanent employees. At the same time, however, the Legislature sought to shield from the effects of the new law regularly credentialed teachers who had been employed in regular educational programs and then assigned as ROP instructors. Thus, a probationary teacher in the regular education program of a school district who was accruing credit toward permanent status, but who was then assigned to teach in an ROP, could keep counting his or her service toward the attainment of permanent status even while teaching ROP.

Here, because Reis remained in his .57 FTE regular teaching position during the 1998–1999 school year and was assigned to teach ROP only as a second, concurrent part-time assignment, his ROP assignment did not stop him from accruing credit toward permanent status in his regular teaching position. He continued to accrue credit toward permanent status in his .57 FTE position during the 1998–1999 school year without regard to section 44910, and in fact, achieved permanent status at the beginning of the 1999–2000 school year.

In his .43 FTE position, however, Reis was not accruing credit toward permanent status when he was assigned to teach ROP. Before first teaching ROP in his .43 FTE position during the 1998–1999 school year, Reis was a noncertificated maintenance employee in the .43 position. Thus, Reis's assignment to teach ROP did not interrupt any accrual of service credit toward permanent status in his .43 FTE position. Consequently, in his .43 FTE position, Reis was not the sort of employee the Legislature was seeking to protect by the exception upon which he seeks to rely.

Because Reis did not fall within either of the exceptions in section 44910, his service as an ROP teacher could not count toward the attainment of permanent status in his .43 FTE position.

Reis offers another statutory path to permanent status in his .43 FTE position, a path the trial court used to find permanency. This path is based on the interplay between sections 44916 and 44918 with section 44929.21, subdivision (b). When Reis was first hired in the .43 ROP teacher position during the 1998–1999 school year, his statement of employment status stated he was "probationary 1" in this position; in subsequent years, his status in the .43 position was not delineated or was specified as temporary. When Reis was retained in the same ROP position for 2002–2003, nothing pertinent was stated regarding his employment status. From this, the trial court concluded that when the District failed to notify Reis of his temporary status in his .43 FTE position for the 2002–2003 school year, his service for that year was deemed probationary under section 44916 (under that section, if a written statement of employment status does not indicate temporary status, a certificated, nonpermanent employee is deemed probationary). And building from this, Reis's service during the prior 2001–2002 school year was also deemed probationary, under section 44918, subdivision (a) (under that section, a temporary employee who performs a certain amount of duties and is a probationary employee the following year may have this temporary year deemed probationary too). Section 44929.21, subdivision (b), states that a teacher generally obtains permanent status after two years of continuous employment as a probationary teacher (in a position requiring certification) upon his or her reelection to the district for the third consecutive year. Combining the 1998–1999 probationary year for the .43 position with the 2001–2002 probationary-deemed year, the trial court reasoned, gave Reis two probationary years of service for that position and granted him permanent status on his first day of the 2002–2003 school year.

Unfortunately for Reis, this statutory path goes nowhere; it does not even rise to the level of a dead end. Most glaringly, it ignores the specific statute directly on point—section 44910. And even putting aside section 44910, section 44929.21, subdivision (b), requires the qualifying probationary service to have been *consecutive*, which is not the case under this approach.

### 3. *The Trial Court Properly Awarded Reis Attorney Fees*

The District contends the trial court erred in awarding attorney fees under Government Code section 800 because its ruling was based upon insufficient evidence and was contrary to existing case law. We reject this claim.

Government Code section 800 states in pertinent part: "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law, except actions resulting from actions of the State Board of Control, where it is shown that the award, finding, or other determination of the

proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his or her official capacity, the complainant if he or she prevails in the civil action may collect reasonable attorney's fees, computed at one hundred dollars ($100) per hour, but not to exceed seven thousand five hundred dollars ($7,500), where he or she is personally obligated to pay the fees, from the public entity, in addition to any other relief granted or other costs awarded."

 "The award of attorney's fees under Government Code section 800 is allowed only if the actions of a public entity or official were wholly arbitrary or capricious. The phrase 'arbitrary or capricious' encompasses conduct not supported by a fair or substantial reason [citation], a stubborn insistence on following unauthorized conduct [citation], or a bad faith legal dispute [citation]." (*Kreutzer v. County of San Diego* (1984) 153 Cal.App.3d 62, 78 [200 Cal.Rptr. 322] (*Kreutzer*).) " 'Attorney's fees may not be awarded [under Gov. Code, § 800] simply because the administrative entity or official's action was erroneous, even if it was "clearly erroneous." ' " (*American President Lines, Ltd. v. Zolin* (1995) 38 Cal.App.4th 910, 934 [45 Cal.Rptr.2d 370].) "The determination of whether an action is arbitrary or capricious is essentially one of fact, within the sound discretion of the trial court [citation]." (*Kreutzer, supra,* at p. 78.)

Here, the trial court found that the District's conduct in not reelecting Reis to his .57 FTE permanent position constituted arbitrary and capricious conduct because the District did not offer the court any defense or rationale for its actions. We find no abuse of discretion in this determination. Reis's entitlement to permanent status in his .57 FTE employment was undisputed, but nonetheless the District refused to withdraw its nonreelection of him. The District failed to respond to Reis's attorney concerning this portion of Reis's employment. In the trial court proceedings, the District inexplicably failed to defend its actions in response to the petition. In light of these facts, the trial court did not abuse its discretion in concluding the conduct of the District constituted "a stubborn insistence on following unauthorized conduct." (*Kreutzer, supra,* 153 Cal.App.3d at p. 78.)

### DISPOSITION

That part of the judgment concluding that Reis had obtained permanent status in his .43 FTE position is reversed. In all other respects, the judgment is affirmed. Each party shall pay its own costs on appeal. (Cal. Rules of Court, rule 27(a).)

Nicholson, J., concurred.

**ROBIE, J.,** Concurring and Dissenting.—I concur in parts 1, 2A, and 3 of the Discussion of the majority opinion. I also concur in the majority's conclusion in part 2B that Tony Reis failed to obtain permanent status based on his claim the district failed to give him notice of his temporary status under Education Code[1] section 44916 because Reis failed to demonstrate two consecutive years of probationary service. (§ 44929.21, subd. (b).) As to the remainder of part 2B, however, I respectfully dissent. I conclude Reis is precisely the type of teacher the Legislature intended to exempt from section 44910.

Since 1997, Tony Reis has maintained a "Full Time Preliminary Designated Subjects Vocational Educational Teaching Credential" in the subject of agricultural mechanics. At the Biggs Unified School District, agricultural mechanics is part of the regular educational program.

In 1997, Reis started as a probationary teacher teaching agricultural mechanics in a .57 full-time equivalent (FTE) position and obtained permanent status in that position in 1999. He taught that subject until he was given a notice of termination in March 2003.

In his second year of employment with the district, the district assigned Reis to a regional occupational program (ROP) class for an additional .43 FTE position. He continued in that position until he was given notice of his termination in March 2003.

The first paragraph of section 44910 provides that "Service by a person as an instructor in classes conducted at regional occupational centers or programs, . . . shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district." However, the second paragraph contains an exception that states this rule does not apply to a "regularly credentialed teacher who has been employed to teach in the regular educational programs of the school district and subsequently assigned as an instructor in the regional occupational centers or programs." (§ 44910.) The pivotal question here is whether Reis fits within this exception. I believe he does.

In examining this statute, our job is to " 'ascertain legislative intent so as to effectuate a law's purpose. [Citations.] "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what has been inserted; . . ." [Citation.] Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no

---

[1] All further statutory references are to the Education Code unless otherwise indicated.

further to ascertain its meaning. [Citation.]' " (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375–376 [119 Cal.Rptr.2d 642].)

The key word of the statute—"subsequently"—is unambiguous. The basic definition of "subsequent" is "following in time, order or place." (Merriam-Webster's Collegiate Dict. (10th ed. 2000) p. 1170, col. 1.) This definition renders one event subsequent to another if it follows in any one of the three potential classifications: time, order *or* place. It does not suggest that the event must follow in all three classifications, nor does the use of the disjunctive render this word ambiguous. Thus, section 44910 simply requires that the teacher be employed in the regular educational program and then following that event in time *or* order *or* place be appointed to a position in the ROP program.

Here, Reis was a regularly credentialed teacher who was employed to teach in the regular educational programs of the district during the 1997–1998 school year in a .57 FTE position. Subsequent to that employment, he was assigned to teach as an ROP teacher in a .43 FTE position. Thus, subsequent both in *time* and in *order* to Reis's initial teaching assignment in the regular educational programs of the district, he was assigned as an instructor to an ROP position. He fits within the literal terms of the exception.

I believe the majority and I would both agree that a full-time mathematics, English, Latin, or Greek teacher who was subsequently assigned to a full-time ROP position would fall into this exception. However, nothing in the language of section 44910 or the definitions of "subsequently assigned" limits its application to assignments that wholly displace a teacher's prior assignment. The statute does not state that the subsequent assignment must follow in time *and* in place *and* in order. In my view, the majority's analysis of this statute that adds this restriction is not supported by the plain language of the statute.

Further, I find nothing in the legislative history that supports the majority's analysis that section 44910 does not apply to Reis. As the majority acknowledges, the intent behind section 44910 was to "allow school districts more flexibility in operating their ROP's. (Assem. Com. on Ed., Rep. on Assem. Bill No. 292 (1973–1974 Reg. Sess.) May 2, 1973 (Assembly Report).) Under preexisting law, an ROP teacher, like other teachers, could attain permanent status after three years of service as a probationary teacher. (*Ibid.*) But because ROP's involve 'education and training in career technical courses' (§ 52301, subd. (a)), an ROP teacher may have only 'specialized training.' (Assem. Rep., *supra.*) Furthermore, it was perceived that 'to meet and adjust to the rapidly changing needs of our technical society, it ha[d] become

necessary to initiate new training programs and phase out programs for which there [wa]s no longer a need in terms of employment opportunities.' (Los Angeles Unified Sch. Dist., Statement Regarding Assem. Bill No. 292 (1973–1974 Reg. Sess.) as amended Apr. 26, 1973.) If a particular program was dropped, but the teacher in that program had acquired permanent status, the teacher could be 'virtually untransferable to another teaching assignment within the district.' (Assem. Rep., *supra*.)" (Maj. opn., *ante*, at pp. 820–821.)

Thus, as the majority correctly concludes, the purpose behind section 44910 was "to prevent these specialized, virtually untransferable ROP teachers from becoming permanent employees." (Maj. opn., *ante*, at p. 821.) Reis, however, is not one of those teachers. By definition, a teacher who first works in the regular educational program of a school district before being assigned to the ROP program is not a specialized virtual untransferable teacher. Before he was an ROP teacher, Reis taught in the regular educational programs of the Biggs Unified School District. While Reis's subject of agricultural mechanics may not have the universal application of reading, writing or arithmetic, Reis is no different than a Greek teacher or a performing arts teacher, whose subject has limited application. In short, Reis is not the type of teacher the Legislature sought to exclude from the ranks of permanent employees by virtue of this statute.

Rather, Reis is exactly the type of teacher the Legislature explicitly sought to shield from the effects of the new law: a regularly credentialed teacher who had previously been employed in regular educational programs and then assigned to the ROP program. While the statute may most often protect full-time teachers who are subsequently assigned to an ROP program, nothing in the legislative history for this section supports the proposition that the Legislature only sought to protect those teachers. If that was the Legislature's intent, they are free to write a statute which says that. Until they do, I am bound by the unadorned language of the statute.

Given that there are only four possible categories for teachers: permanent, probationary, temporary, and substitute (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916–917 [129 Cal.Rptr.2d 811, 62 P.3d 54]), and that the district has offered no other basis for classifying Reis as a temporary or substitute teacher when it hired him to be an ROP teacher, Reis's initial ROP service must have been as a probationary teacher. Once he served two consecutive probationary years as an ROP teacher in the .43 assignment and was employed the first day of the 2000–2001 school year in that same position, his rights as a permanent teacher were vested automatically independent of any action by either party. (*Kamin v. Governing Board* (1977) 72 Cal.App.3d 1014, 1017–1018 [139

Cal.Rptr. 853].) Thus, I would conclude Reis achieved permanent status in his .43 FTE position effective the first day of the 2000–2001 school year. (§ 44929.21, subd. (b).)