Filed 9/3/25  Wolfswinkel v. Gordon CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TIFFANY L. WOLFSWINKEL, | D083853 |
| Plaintiff and Appellant, | |
| v. | |
| STEVE GORDON, as Director of Motor Vehicles, etc., | (Super. Ct. No. 37-2022-00000726-CU-PT-CTL) |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Keri G. Katz, Judge.  Affirmed.

Law Office of A.P. Zmurkiewicz and A.P. Zmurkiewicz for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Jodi L. Cleesattle and Julianne Kelly Horner, Deputy Attorneys General, for Defendant and Respondent.

Tiffany L. Wolfswinkel appeals from an order of the superior court denying her request for attorney fees under Government Code section 800[1] following the rescission of a decision from the Department of Motor Vehicles

---

[1]    Further unspecified statutory references are to the Government Code.

(DMV) suspending her driver's license for driving with a blood alcohol content (BAC) greater than 0.08 percent.

The trial court ordered the DMV to rescind its prior order of suspension based on *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517 (*DUI Lawyers*), in which the court held that "combining the roles of advocate and adjudicator in a single person employed by the DMV violates due process under the Fourteenth Amendment and the California Constitution article I, section 7." (*DUI Lawyers*, at p. 532.) Wolfswinkel sought attorney fees under section 800 and the trial court denied the request, finding she failed to establish the DMV hearing officer's decision was the result of arbitrary or capricious conduct.

Wolfswinkel contends the trial court failed to adequately address her argument regarding certain evidentiary rulings the hearing officer made, and that the hearing officer's refusal to allow her to obtain and submit additional evidence regarding the reliability of the breath test machine used to obtain her BAC on the day of her arrest was arbitrary and capricious. We conclude the trial court did address Wolfswinkel's arguments, and properly concluded the hearing officer did not act in an arbitrary or capricious manner. According, we affirm the trial court's order.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Traffic Stop and Administrative Hearing

In April 2021, Officer B. Ross of the Chula Vista Police Department observed Wolfswinkel talking on a cellular phone while driving and initiated a traffic stop. Upon making contact with Wolfswinkel, Ross noticed that she had watery eyes, that her speech was slow and slurred, and that she smelled of alcohol. Wolfswinkel performed poorly on several field sobriety tests and Ross placed her under arrest. Ross searched Wolfswinkel's vehicle incident

2

to the arrest and found two bottles of whiskey; one was full and sealed, and the other was opened and almost empty.

Ross transported Wolfswinkel to jail, where another officer administered a breathalyzer test. Wolfswinkel blew into the machine twice, and the machine indicated that she had a BAC of 0.256 at 4:38 p.m. and a BAC of 0.247 at 4:42 p.m. Wolfswinkel stated that she woke up "impaired" and had two shots of whiskey after breakfast at 10:00 that morning.

Ross gave Wolfswinkel written notice that her license would be revoked, effective 30 days from the date of the notice, under California Vehicle Code section 13353.2 because she was arrested for driving under the influence and completed a breath test that indicated a BAC above 0.08 percent.

Wolfswinkel requested an administrative hearing. Tiffany Van Kirk, an employee of the DMV, served as the hearing officer. Prior to the hearing, Wolfswinkel's counsel sent a subpoena to the custodians of records for the Chula Vista Police Department and the San Diego County Sheriff's Department Regional Crime Lab. The subpoenas included a request that the custodians of records appear as witnesses, and Wolfswinkel's counsel informed the hearing officer that he intended to call both custodians of record to testify.

The Chula Vista Police Department responded with a declaration stating they did not have any relevant records. The San Diego County Sheriff's office produced a calibration certificate and records related to the breathalyzer used on Wolfswinkel (an Intox EC/IR II made by Intoximeter, Inc.), along with a declaration from Richard Debevec as the custodian of the produced records, and a letter stating that the "Sheriff's Department believes the remaining records sought in the subpoena are not relevant to the matter

3

before the DMV." Thereafter, Wolfswinkel's counsel sent another subpoena to Debevec, as well as another notice that he intended to call Debevec as a witness at the administrative hearing.

At the hearing, the hearing officer offered, marked, and admitted the following documents into evidence: 1) the breath strip from Wolfswinkel's breathalyzer test and an associated statement from the officer that conducted the test; 2) the police report from the traffic stop; 3) a supplemental report regarding the arrest; and 4) two printouts of Wolfswinkel's driving record.

Wolfswinkel sought to introduce the subpoenas and associated records. The hearing officer admitted the custodian's declaration and the calibration records the sheriff's office produced, but not the subpoenas themselves, although she noted they would be included in the administrative record. Counsel noted that he intended to call the custodian of records as a witness and the hearing officer asked for an offer of proof.

Wolfswinkel's counsel explained that California Code of Regulations, title 17 requires "that determinations of accuracy be performed by forensic alcohol analysts at a minimum every 10 days," and that he intended to establish, through the custodian of records, that the sheriff's office did not produce further calibration records because there are none, "because no determinations of accuracy are being performed every 10 days as required by

4

Title 17."[2]  He asserted the testimony would therefore rebut the declaration that the officer administered the test in compliance with Title 17.

The hearing officer determined "the information that was objected to is not found to be relevant and is not necessary to establish the facts of this case."  Similarly, she found the testimony of the witness not "relevant based on what was submitted."  She explained, "The calibration certification submitted along with the records is sufficient, and so I don't find your subpoena requesting the additional information as relevant . . . [Debevec] already signed a declaration . . . so there's no need to have his testimony to a declaration that's already been submitted."

Counsel stated that the documents requested in the second subpoena— and specifically the certificate of analysis for the dry gas standard used to verify the calibration of the machine—were relevant and that he would like to call Debevec, "to question him regarding the failure to respond to this subpoena."  Counsel explained that the dry gas tank was connected to the breathalyzer device and used to run a test sample before each breath sample, and that the certificate of analysis would confirm whether the stated known concentration of alcohol in the tank was the same as what was entered by the technician.  He stated further that the failure to keep records related to the standard would be a violation of Title 17.  The hearing officer found the certificate of analysis for the dry gas was "not relevant or necessary."

---

[2]  California Code of Regulations, title 17, section 1221.2 addresses the standard procedures for breath alcohol testing; subdivision (a)(2) provides that the machine should be checked for accuracy using a "periodic analysis of a reference sample of known alcohol concentration within accuracy and precision limits of plus or minus 0.010 grams% of the true value," (*id.*, subd. (a)(2)(A)) and that " 'periodic' means either a period of time not exceeding 10 days or following the testing of every 150 subjects, whichever comes sooner." (*Id.*, subd. (a)(2)(B).)

Wolfswinkel did not offer any further evidence. In December 2021, the hearing officer issued her findings and decision. The DMV determined there was reasonable cause to believe Wolfswinkel was driving under the influence of alcohol, that she was placed under lawful arrest, and that she was in fact driving a vehicle with a BAC of 0.08 percent or more. Accordingly, the DMV suspended Wolfswinkel's driver's license.

## B. Petition for Review and Request for Attorney Fees

Wolfswinkel filed a petition for review in the trial court. She asserted the hearing officer exceeded her constitutional and statutory authority, made erroneous interpretations of law, acted in an arbitrary and capricious manner, and made determinations not supported by the record. She asked that the court order the DMV to rescind the order suspending her license. In her briefing, Wolfswinkel argued the hearing officer exceeded her constitutional authority by acting as both an advocate and adjudicator, based on the holding in *DUI Lawyers* (published in April 2022, after the final decision to revoke Wolfswinkel's license). In addition, she asserted the hearing officer exceeded her constitutional and statutory authority by denying Wolfswinkel the right to obtain, present, and admit evidence and testimony regarding the certificate of analysis and additional records regarding the required periodic determinations of accuracy of the breathalyzer machine.

The trial court found *DUI Lawyers* dispositive, granted the petition and entered judgment in favor of Wolfswinkel. In issuing its ruling, the court declined to reach the other grounds that Wolfswinkel argued. Wolfswinkel did not appeal the trial court's order or judgment.

Wolfswinkel then filed the motion for attorney fees at issue in the present appeal. She argued both that the DMV violated her right to due

6

process based on *DUI Lawyers* and the trial court's associated findings on her petition, and that the DMV also violated her due process rights by denying her the right to obtain and present evidence that "would have shown whether the machine that was used to test Ms. Wolfswinkel's breath was working properly and producing accurate and reliable test results."

The trial court denied the motion for attorney fees. In doing so, the trial court found Wolfswinkel failed to establish the DMV's decision was the result of arbitrary or capricious action or conduct. The court noted that Wolfswinkel relied on the hearing officer's denial of her requests to obtain additional records and to call Debevec as a witness. The court explained that the hearing officer determined the records that had already been submitted were sufficient to establish the breathalyzer was in proper working order and that the hearing officer's decision was not the result of arbitrary or capricious action or conduct. The court explained further, "Petitioner relies exclusively on the hearing officer's evidentiary rulings. [C]onsidering the evidence the hearing officer relied on, [Wolfswinkel] fails to establish that the Decision suspending [her] driving privilege was the result of arbitrary or capricious action or conduct by the Hearing Officer."

Wolfswinkel filed a timely notice of appeal from the order denying her motion for attorney fees.

## II. DISCUSSION

Wolfswinkel asserts the trial court erred by neglecting to decide the relevant question of whether the hearing officer acted in an arbitrary or capricious manner by denying her request to obtain, examine, and present additional "better" evidence relevant to whether the breathalyzer was working properly. She asserts further that the trial court ignored well-established law that the hearing officer could not rely on circumstantial

7

evidence, such as her poor performance on the field sobriety tests, to prove that her BAC was at or above 0.08 percent.

## A. Relevant Legal Principles and Standard of Review

A driver served with a notice of suspension or revocation of their driver's license following an arrest for driving under the influence "is entitled to a hearing on request (§ 13558, subd. (a)), at which the only issues to be decided . . . are whether the arresting officer had reasonable cause to believe she was driving, whether she was arrested for an enumerated offense, and whether she was driving with 0.08 percent BAC or higher." (*Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1207−1208, fn. omitted (*Coffey*).) "If the DMV hearing officer finds these three statutory prerequisites proved by a preponderance of the evidence, the accused's driver's license will be suspended . . . ." (*Id*. at p. 1208.) "[W]ithin 30 days of the issuance of the notice of determination of the department sustaining an order of suspension or revocation of the person's privilege to operate a motor vehicle after the hearing pursuant to [Vehicle Code] Section 13558, the person may file a petition for review of the order in the court of competent jurisdiction in the person's county of residence." (Veh. Code § 13559.)

Where, as here, the petitioner prevails on the petition for review, section 800 may permit an award of attorney fees. It provides:

> "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law . . . if it is shown that the award, finding, or other determination of the proceeding *was the result of arbitrary or capricious action or conduct* by a public entity or an officer thereof in his or her official capacity, the complainant if he or she prevails in the civil action may collect from the public entity reasonable attorney's fees, computed at one hundred dollars ($100) per hour, but not to exceed seven thousand five hundred dollars ($7,500), if

8

he or she is personally obligated to pay the fees in addition to any other relief granted or other costs awarded."

(§ 800, subd. (a); italics added.)

Thus, to be entitled to fees, Wolfswinkel had to show the DMV's determination was "the result of arbitrary or capricious action or conduct" by the hearing officer. (§ 800, subd. (a).) It is not enough that the official's actions were erroneous. (*Reis v. Biggs Unified School Dist.* (2005) 126 Cal.App.4th 809, 823 (*Reis*).) Rather, the " 'phrase "arbitrary or capricious" encompasses conduct not supported by a fair or substantial reason [citation], a stubborn insistence on following unauthorized conduct [citation], or a bad faith legal dispute.' " (*Ibid.*)

" 'The determination of whether an action is arbitrary or capricious is essentially one of fact, within the sound discretion of the trial court.' " (*Reis, supra,* 126 Cal.App.4th at p. 823.) Accordingly, we review the trial court's decision whether to award fees for an abuse of that discretion. (*Doe v. Atkinson* (2023) 96 Cal.App.5th 667, 678.)

## B. The Trial Court Did Not Err

Here, Wolfswinkel asserts the hearing officer acted in an arbitrary and capricious manner when she refused to allow Wolfswinkel to obtain additional documents related to the periodic testing of the breathalyzer at issue, and to call Debevec as a witness. She asserts further that the trial court failed to address this argument in its order denying her request for fees. We disagree.

### 1. The Trial Court Considered Wolfswinkel's Arguments

In its written order, the trial court explained,

> "[Wolfswinkel] relies on the Hearing Officer's denial of [her] request to call subpoenaed witness Richard Debevec and [the] denial of [her] request to introduce any records produced by Debevec in response to the subpoena."

9

The trial court then explained that the hearing officer confirmed that the subpoenas were part of the record, even if not marked as evidence, and that "the only evidence excluded by the Hearing Officer was the testimony of Debevec, and any records produced by Debevec pursuant to the separate subpoena issued by [Wolfswinkel] directly to Debevec."

The trial court explained further,

> "[Wolfswinkel's] subpoena to Debevec sought additional records in the form of certificates of analysis for the dry gas standard/target. At the hearing, [her] offer of proof as to Debevec was that examination was necessary to ascertain whether 'determinations of accuracy' of the device were being done every 10 days 'as required by Title 17' and to determine whether the correct known alcohol standard/value was entered into the machine."

> "After hearing [Wolfswinkel's] offer of proof, the Hearing Officer determined that the Calibration Certificate and supporting record and the breath test strip, Precautionary Checklist and Chemical Test Certification on the DS-367 were sufficient to establish that the machine was in proper working order and 'available and reliable' at the time the breath test was administered to [Wolfswinkel]. The Hearing Officer's ultimate Decision suspending [Wolfswinkel's] driving privilege was based on, not only the breath test results, but also on [Wolfswinkel's] admission of alcohol consumption, the observations of the arresting officer, field sobriety tests conducted by the arresting officer, the DS-367 (Officer's Sworn Statement), the Arrest Report and Supplemental Report. In these circumstances, the court finds [Wolfswinkel] *fails to establish that the Hearing Officer's Decision to suspend Petitioners driving privilege was the result of arbitrary or capricious action or conduct by the Hearing Officer*." (Italics added.)

Finally, the trial court rejected Wolfswinkel's remaining arguments, and explained,

> "[Wolfswinkel] relies exclusively on the Hearing Officer's *evidentiary rulings*. [C]onsidering the evidence the

10

Hearing Officer relied on, [Wolfswinkel] fails to establish that the Decision suspending [her] driving privilege was the result of *arbitrary or capricious action or conduct by the Hearing Officer.*" (Italics added.)

Accordingly, in our view, the record establishes that the trial court considered Wolfswinkel's arguments with respect to the actions of the hearing officer in making its evidentiary rulings with respect to Debevec and the additional documents, *and* the basis of the hearing officer's final decision. This is consistent with section 800, which required Wolfswinkel to establish that the hearing officer's final decision "*was the result of arbitrary or capricious action or conduct.*" (§ 800, subd. (a), italics added.) Under the applicable abuse of discretion standard of review, we do not reweigh evidence and we do not substitute our judgment for that of the trial court. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

### 2. The Hearing Officer's Evidentiary Rulings Were Not Arbitrary and Capricious

Next, we cannot say that the hearing officer acted in an arbitrary or capricious manner when it made the disputed evidentiary rulings.

Vehicle Code section 14104.5, subdivision (a) provides that a "hearing officer . . . shall issue subpoenas or subpoenas duces tecum, or both, at the request of any party, for attendance or production of documents at the hearing." The hearing officer did so here. However, as it was their right to do, the sheriff's department objected to the scope of the subpoena. They provided the documents they believed relevant, along with a declaration from Debevec, establishing the authenticity of the documents they provided.

Wolfswinkel does not take issue with the documents the sheriff's office did produce, including the calibration certificate, or the declaration of authenticity. She wanted additional documents and testimony from Debevec concerning what additional documents were or were not available. To the

11

extent Wolfswinkel disagreed with the sheriff department's objections as to any remaining documents, it was incumbent upon her to seek enforcement of the subpoena. If the subpoenaed party fails to seek a protective order and still refuses to produce documents, the driver may ask the DMV to issue a subpoena on his or her behalf. (*Delgado v. Department of Motor Vehicles* (2020) 50 Cal.App.5th 572, 578.) And if the subpoenaed party still refuses to comply, the driver may ask the DMV to certify the facts to superior court for contempt proceedings. (§§ 11455.10, 11455.20.) DMV hearing officers accordingly have discretion and flexibility to grant hearing continuances to issue and enforce subpoenas when the need arises. (*Delgado,* at p. 578.)

As to the request for Debevec to testify, Wolfswinkel's attorney explained that he intended to establish "that the reason no other records of determinations of accuracy besides this one calibration certificate were produced is because there are none, because no determinations of accuracy are being performed every 10 days as required by Title 17." He made no argument or offer of proof establishing that Debevec had personal knowledge regarding the office's regular practices for testing the machine or any additional records the sheriff's office did or did not maintain. Just because Debevec was the custodian of records for the documents the sheriff's office did produce does not mean that he had comprehensive knowledge regarding what other documents might be available or the routine practice of the office in terms of verifying whether "determinations of accuracy are being performed every 10 days as required by Title 17." Notably, Wolfswinkel did not subpoena the officer who operated the machine and entered the standard, at the time of her test. Beyond speculating that Debevec may have some such information, Wolfswinkel offered no reason to believe the dry gas target was

not as reported on the test strip, or that the machine was not used, and therefore tested against the standard, every 10 days as required by Title 17.

The hearing officer determined the additional evidence and testimony Wolfswinkel sought was not relevant or necessary to establish the facts of this case. We acknowledge the additional documentation Wolfswinkel sought may have been relevant to rebut the assertion that the breath machine was operating correctly during Wolfswinkel's test. However, on this record, we cannot say that the hearing officer's ruling was arbitrary or capricious.

At a hearing like the one at issue here, "the DMV bears the burden of proving by a preponderance of the evidence certain facts, including that the driver was operating a vehicle with a blood-alcohol level of 0.08 percent or higher." (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1232 (*Manriquez*.) "The DMV *may* satisfy its burden via the presumption of Evidence Code section 664," which " 'creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17.' " (*Manriquez,* at p. 1232, italics added.) " 'The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence.' " (*Ibid*.) "With this presumption, the officer's sworn statement that the breath-testing device recorded a certain blood-alcohol level is sufficient to establish the foundation, even without testimony at the hearing establishing the reliability of the test." (*Id*. at p. 1233.) "Once the DMV establishes its prima facie case by presenting documents contemplated in the statutory scheme, the driver must produce affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV." (*Ibid*.)

Here, the DMV officer entered Wolfswinkel's breath test strip from April 2021, along with the "precautionary checklist," signed by the officer

13

that administered the test, and therefore the results were presumptively valid. *In addition*, the DMV also admitted a calibration certificate for the machine that was used, certifying that it accurately analyzed four different dry gas targets in a series of five tests each, on February 11, 2021, less than three months before Wolfswinkel's test. Finally, the DMV also submitted the arrest records, indicating that Wolfswinkel performed extremely poorly on field sobriety tests and admitted to drinking earlier that day.

Wolfswinkel asserts the additional evidence she sought was relevant and not cumulative because it *might* have rebutted the Evidence Code section 664 presumption, thereby shifting the burden back to the DMV. Accordingly, she asserts the hearing officer abused her discretion in refusing to admit it. The certificate of analysis would have confirmed whether the dry gas target the technician entered was accurate, and if it were different from the entered value, it *may* have rebutted the Evidence Code section 664 presumption. Thus, it was at least arguably relevant and not cumulative. However, even if Wolfswinkel could rebut the Evidence Code section 664 presumption, which is speculative at best on this record, that does not mean that the breath test results would not still be admissible. It simply means that the DMV could not rely on the Evidence Code section 664 presumption. (See *Manriquez, supra,* 105 Cal.App.4th at p. 1233 [" 'Once such showing has been made, the burden shifts to the DMV to prove that the test was reliable despite the violation' "].)

Here, as the hearing officer indicated, there was additional evidence in the record establishing the machine was reliable. The evidence that had already been submitted indicated that the machine had been tested and certified against multiple reference samples three months prior. Moreover, this was not a close case where Wolfswinkel's test results were just above the

14

legal limit, such that the exact precision of the machine was critical. Rather, her results were 0.256 and 0.247, both over three times above the legal limit of 0.08 percent. Even if the officer conducting the test entered the standard incorrectly, or if the machine was not tested every 10 days, as Wolfswinkel speculated, the calibration certificate established the machine did correctly identify multiple reference samples just three months earlier. There was no reason to believe the calibration on the day of Wolfswinkel's tests was off by a factor of three, or that any additional evidence Wolfswinkel sought would prove that it was. Like the trial court, the hearing officer had, "broad discretion to determine the relevance of evidence." (See *Coffey, supra,* 60 Cal.4th at p. 1213.)

Thus, even if the hearing officer's evidentiary rulings were technically incorrect, because the additional evidence was at least potentially relevant and not cumulative, they do not rise to the level of arbitrary and capricious conduct necessary to support an award of attorney fees under section 800. Here, the DMV was not relying entirely on the technician's declaration of compliance with Title 17. Rather, there was strong additional evidence that the breath test machine was working reliably and that Wolfswinkel was driving with BAC well above the legal limit of 0.08. (See *Reis, supra,* 126 Cal.App.4th at p. 823.)

Finally, we find no error in the hearing officer, or the trial court, considering contemporaneous circumstantial evidence in concluding the additional evidence regarding the accuracy of the breathalyzer was not necessary. While it may be true that a driver's performance on field sobriety tests cannot establish that the driver's BAC was above 0.08% *on their own*, it can be used as evidence to support the presumption triggered by a BAC test result of 0.08 percent or more. (See *Coffey, supra,* 60 Cal.4th at

15

pp. 1214–1216 [concluding "non-chemical-test circumstantial evidence of intoxication may be admissible" in an administrative proceeding regarding the suspension or revocation of a driver's license].)

### III.   DISPOSITION

The order is affirmed.  Respondent is awarded costs on appeal.


KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.